IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:07-CV-125-FL

CYNTHIA HARPER,

    Plaintiff,

v.

**MEMORANDUM & RECOMMENDATION**

AMBUMED NC INC., AVETIS
AVESYAN and AMBUMED, INC.,

    Defendants.

This matter is before the court on Plaintiff Cynthia Harper's motion for entry of default and default judgment. [DE-24]. Defendants Ambumed NC Inc., and Avetis Avesyan did not respond.[1] A hearing was held on August 22, 2008, regarding Plaintiff's motion. Accordingly, this matter is ripe for adjudication.

### STATEMENT OF THE CASE

Plaintiff began working for Defendants as an ambulance dispatcher in Kinston, North Carolina on December 21, 2005. Plaintiff remained employed by Defendants through June or July of 2006. During her employment, Defendants took premiums for health insurance from Plaintiff's pay check but did not pay the health insurance company for at least one month. As a result of the non-payment, the insurance company cancelled

---

[1] Defendants include Ambumed NC Inc., Avetis Avesyan, and Ambumed, Inc. The court refers here only to Ambumed NC Inc., and Avetis Avesyan because, as explained more fully below, Ambumed Inc. is involved in a bankruptcy proceeding and the court entered a stay of all proceedings against Ambumed, Inc. in this court during the pendency of the bankruptcy proceeding.

the group policy which created a four or five day window in which Plaintiff did not have insurance and was unable to receive her medications.

On July 3, 2007, Plaintiff filed her complaint in Pitt County Superior Court. [DE-1]. Defendants removed the action to this court because Plaintiff was seeking to recover, clarify or enforce her rights to benefits under an "employee benefit plan" defined in and governed by the Employee Retirement Income Security Act of 1974, ("ERISA'), 28 U.S.C. §§ 1001-1461. This court has federal question jurisdiction over ERISA claims; accordingly the case was removed to federal court pursuant to 28 U.S.C. § 1441(a) & (b).

In November 2007, Ambumed Inc., filed a voluntary petition in Bankruptcy in the United States District Court for the Central District of California under Chapter 11 of the United States Bankruptcy Code. On May 1, 2008, attorney for Defendants, Stephen A. Dunn, filed a motion to withdraw because he was no longer able to contact his clients. [DE-16]. In a May 1, 2008 Order, Chief Judge Flanagan stayed the claims against Ambumed Inc., based on the bankruptcy proceedings. Because it appeared that neither Ambumed NC Inc. nor Avetis Avesyan were involved in bankruptcy proceedings, the court allowed the case to proceed against them. The May 1, 2008 Order required defense counsel to confirm the service addresses for Defendants Ambumed NC Inc. and Avetis Avesyan, to ensure proper service since defense counsel was withdrawing. Defense counsel complied with the Court's order. [DE-19].

To date, Defendants have not responded to Plaintiff's complaint or any other court document. In addition, to the court's knowledge, Defendants Ambumed NC Inc. and Avetis Avesyan have not obtained new counsel, nor have they filed for protection under the Bankruptcy Code. On June 6, 2008, Chief Judge Flanagan entered an order directing

Plaintiff to "take such steps as necessary to bring this matter to conclusion upon the apparent default of Defendants Ambumed NC Inc. and Avetis Avesyan." [DE-20]. After Plaintiff failed to respond to the Court's June 6, 2008 Order, Chief Judge Flanagan entered another order on July 9, 2008, again ordering Plaintiff to take the steps necessary to bring this matter to conclusion, or the matter would be dismissed for failure to prosecute. [DE-21].

On August 7, 2008, Plaintiff filed a motion for entry of default against all Defendants—Ambumed Inc., Ambumed NC Inc., and Avetis Avesyan. In an August 11, 2008 order, Chief Judge Flanagan referred the matter to the undersigned to conduct an evidentiary hearing regarding Plaintiff's motion for default judgment. [DE-26]. The order directed Plaintiff to file (1) a pre-trial order specifically addressing exhibits and witnesses sought to be relied upon, and (2) a concise memorandum of authorities discussing issues of law bearing on the relief sought, including how Plaintiff believed she could proceed against Defendant Ambumend Inc., a bankrupt entity and whether treble or punitive damages were appropriate. Id. Plaintiff failed to file any of the documents required.

A hearing was held on August 22, 2008, in Greenville, North Carolina. Defendants failed to attend. At the hearing, Plaintiff's counsel requested an extension of time to comply with the court's August 11, 2008 order and to seek evidence of damages. Plaintiff's counsel did present some documentary evidence but not in the detail ordered by the Chief Judge.

## FINDINGS OF FACT

A.  **Documentary Evidence**

At the evidentiary hearing held on August 22, 2008, Plaintiff introduced the following documentary evidence:

(1) A pay stub from the pay period of March 22, 2006 to April 21, 2006, showing that Defendants withheld $158.84 for health insurance. [Exh. 1];

(2) A letter dated August 19, 2008, from Dr. Wayne Cox noting that Plaintiff has been a patient of his since February 3, 2000. Dr. Cox noted that Plaintiff was diagnosed in 2005 with cancer of the thyroid gland and hypothyroidism, that she has undergone surgery and that she has no insurance. [Exh. 2, pg. 1];

(3) A letter dated October 12, 2006 from Dr. Wayne Cox. Dr. Cox noted that Plaintiff suffers from thyroid cancer. In addition, she had a thyroidectomy which resulted in hypoparathyroidism and hypothyroidism. She also suffers from hypocalcemia which has produced severe cramps, fatigue, pain, and diaphoresis. In addition she suffers from depression, anxiety and chronic pain. Dr. Cox noted that "[a]s a result of some difficulties with insurance, [Plaintiff] was off all of her medications in March for approximately four days. This again accentuated the problem that she was already experiencing with severe cramping, fatigue, etc." He listed the medications that she was taking as Requip, Synthroid, calcitriol, calcium carbonate, hydrochlorothiazide, Mag Ox, vitamin D, Proventil, Zegerid, Xanax, quinine, Percocet, Zyrtec, Prozac, Flexeril, and Pamine Forte. Dr. Cox concluded that these ailments would likely disable Plaintiff from working. [Exh. 2, pg. 2];

(4) A copy of a billing statement from Physicians East dated August 19, 2008, listing Plaintiff's diagnoses, medications, and costs from August 2007 until July 2008 for various medications and procedures that she has received. [Exh. 3];

(5) A notice of trustee's motion to dismiss the bankruptcy proceeding of Ambumed

4

Corp. in United States Bankruptcy Court for the Central District of California dated February 19, 2008; and

(6) A notice of Chapter 11 Bankruptcy Case, meeting of creditors and deadlines, for Ambumed Corp. dated January 17, 2008. [Exh. 5].

### B. Testimonial Evidence

In addition to the documentary evidence provided, Plaintiff Cynthia Harper testified at the evidentiary hearing. She stated that she lives in Grifton, North Carolina and has been unemployed since August 17, 2007. She was last employed by Elite Medical Transport in Snow Hill, North Carolina, but fell at work, and had to take approximately a week off. She was never able to come back to work because the company went bankrupt.

Plaintiff stated that she was diagnosed with thyroid cancer in 2005 and had her thyroid removed. She has had various complications stemming from the treatment of her thyroid cancer and has other serious medical ailments including a depressive disorder, eczema, hypomagnesemia, and hypocalcemia, among others.

Plaintiff stated that she began her employment with Defendants in December 2005, as head dispatcher in Kinston, North Carolina. She was paid twice and then her pay checks started to bounce when she tried to cash them. Sometimes she had to wait for a few days or a week before being able to cash her pay check. Plaintiff received pay checks through June or July 2006, when she stopped working. Each month, Defendants deducted $158.84 in insurance premiums from Plaintiff's pay check. Plaintiff's insurer was Blue Cross & Blue Shield.

In March 2006, Plaintiff called H&H Drug, her pharmacy in Grifton, to renew certain of her prescriptions. Plaintiff usually went to the pharmacy twice a month to fill

5

prescriptions. The pharmacist at H&H Drug told Plaintiff that her insurance had lapsed. Plaintiff then contacted Defendants' corporate office to determine why she no longer had insurance. She talked to a few individuals who said they knew that Defendants had not been paying the insurance premiums. Plaintiff then went to the corporate office to meet with Ralph Colbert, an employee of Defendants, to discuss the health insurance issue. He told her to find out the price of a seven-day supply of her medications and let the company know the cost. She provided the information, but said that Defendants never paid for a seven-day supply of her medications. Plaintiff also testified that she had a telephone conversation with Ralph Schaefer, an employee of Defendants at the corporate office, and that he allegedly told her that he knew the insurance had been canceled but that "I could f'n die, he didn't care."

In all, Plaintiff was without her medications for four or five days in March 2006. Defendants paid Blue Cross & Blue Shield sometime in March, so that Plaintiff's insurance was reinstated after the four or five day lapse. Plaintiff could not remember the names of all of the medications that she was taking in March of 2006. She admitted that she did not need a refill of all of her medications during the lapse in coverage. She stated that during the lapse, she developed symptoms associated with a withdrawal from calcium, including cramping, inability to use her hands and feet, and numbness. Approximately a week or two after the lapse in insurance, Plaintiff was admitted to the hospital for intravenous medication because her magnesium and calcium levels had gotten extremely low. Plaintiff could not remember how long she stayed at the hospital. Plaintiff stated that the list of her current medications includes, among others: Lyrica, Requip, Synthroid, Vitamin D, Proventil, Zegerid, Xanax, Nizoral, Nasonex, Percocet, Zyrtec, Aciphex, Prozac, Flexeril,

6

Pamine Forte, Darvocet, Relafen, Protonix, Baclofen, and Triamcinolone Acetonide. Plaintiff stated that she was not taking all of those medications in March 2006.

Plaintiff estimated that she spent "a couple thousand dollars" in medical bills for the intravenous medication and hospital stay that resulted from the lapse in coverage. She also testified that her out of pocket expenses for medication before the lapse were around $300 or $400 but that after the lapse, they rose to between $600 and $800. She stated that because of the four or five day lapse in medications, she had to greatly increase her overall medication intake.

Plaintiff stated that she thought her actual damages totaled $50,000. She said that owes approximately $20,000 to $30,000 in hospital bills in addition to her medications.

## DISCUSSION

This matter is before the court to determine whether Plaintiff's motion for entry of default and default judgment should be granted and the extent of her damages. Before the court reaches those issues, however, there are certain procedural concerns that must be addressed.

A. Request for Extension

Plaintiff's counsel requested an extension of time to comply with the court's August 11, 2008 order directing Plaintiff to file a pre-trial order and a concise memorandum of authorities discussing issues of law bearing on the relief sought, and also to find documentation of Plaintiff's damages. Plaintiff's counsel did not provide a valid reason for the delay and the court orally denied the request at the hearing.

B. Notice to Defendants

The court directed Defendants' former attorney, Stephen Dunn, when he withdrew

7

from the case on May 1, 2008, to provide the court with the most recent addresses for Ambumed NC Inc, and Avetis Avesyan, the Defendants who were not in bankruptcy proceedings. [DE-18]. Dunn initially represented all Defendants and all Defendants appeared at the start of the litigation.

Per the court's instructions, Dunn con tacted the court with the most recent addresses that he had for those Defendants. [DE-19]. Dunn filed an attorney's certificate stating that Ambumed NC,Inc., was registered with the North Carolina Secretary of State as a North Carolina corporation with a principal office at 141 Elliot Dixon Road, Ayden, NC 28513, and an office mailing address of Post Office Box 220, Ayden, NC 28513. In addition, Dunn provided the address of Ambumed NC Inc's registered agent for service of process as Business Filings International, Inc., 225 Hillsborough Street, Suite 470, Raleigh NC 27603. Dunn listed the address of Avetis Avesyan as 4465 Gould Ave., La Canada, CA 91011, based on the mailing matrix from the Bankruptcy Petition that Defendant Ambumed Inc. filed in California.

It appears that the court, as well as Plaintiff's attorney has sent filings to Ambumed NC Inc. at the address of its registered agent listed above. However, the court and Plaintiff's attorney sent court documents to Avetis Avesyan c/o Ambumed, Inc., 3333 North San Fernando Boulevard, Burbank, CA 91504. Unfortunately, all court documents sent to Ambumed NC Inc. and Avetis Avesyan have been returned as undeliverable. In addition, the court sent documents to Ambumed Inc., at 3333 North San Fernando Boulevard, Burbank CA 91504, which have also been returned as undeliverable.

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, before a court can enter a default judgment against a party, it must provide written notice of the application

8

for default judgment at least three days before the hearing to the party against whom the application is sought. Here, the court finds that reasonable efforts were made to properly serve the motion for default judgment against Ambumed NC Inc., but not against Avetis Avesyan as he was not served by Plaintiff or the court at the address provided by his former counsel, Steven Dunn. Instead, Plaintiff and the court continued to serve Avetis Avesyan at the address for Ambumed Inc., rather than his home address. Accordingly, as more fully explained below, the court recommends entry of default as to both Ambumed NC Inc. and Avetis Avesyan but entry of default judgment solely against Ambumed NC Inc.

C. Defendant Ambumed Inc.

Plaintiff filed a motion for entry of default against all Defendants—Ambumed Inc., Ambumed NC Inc., and Avetis Avesyan. In an August 11, 2008 order, Chief Judge Flanagan directed Plaintiff to file a concise memorandum of authorities discussing issues of law bearing on the relief sought, including how Plaintiff believes she can proceed against Ambumend Inc., a bankrupt entity. Plaintiff failed to file the required memorandum. At the August 22, 2008 hearing, Plaintiff's counsel admitted that if Ambumed Inc., was in bankruptcy proceedings, then all action in this court should be stayed as to that Defendant. Plaintiff's counsel questioned whether Ambumed Inc. was, in fact, in bankruptcy proceedings. However, counsel had no evidence to suggest that Ambumed Inc. was not in bankruptcy proceedings. As such, entry of default as to Ambumed Inc. is not proper and this order addresses only Ambumed NC Inc. and Avetis Avesyan, the two Defendants who, as far as the court can tell, are not in bankruptcy proceedings.

D. Entry of Default

The court can now turn to the matter of entry of default. Defendants did not attend

9

the August hearing or file any motions in this court responding to Plaintiff's initial complaint or motion for entry of default. [DE-24]. Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure,

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Although Defendants appeared in the proceedings through their former counsel, Steven Dunn, they failed to defend this action by failing to responding to motions and court notices, attend the August 2008 hearing, and obtain new counsel after the withdrawal of their prior counsel. Accordingly, the court recommends entry of default against Defendants Ambumed NC Inc. and Avetis Avesyan.

### E. Default Judgment

The court must next determine whether Plaintiff has adequately stated her claims such that the court may enter default judgment. Under the Federal Rules of Civil Procedure, a court may determine the amount of damages and enter default judgment against a defendant who has failed to plead or otherwise defend, which resulted in entry of default. Fed. R. Civ. Pro. 55(b)(2). Because Avetis Avesyan was not properly served either by Plaintiff or the court, entry of default judgment against Avetis Avesyan is not appropriate. However, with regard to Ambumed NC Inc, the court concludes that Plaintiff's claims are clearly established. Upon default, the well-pleaded facts alleged in the complaint are deemed admitted. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The undisputed facts show that Plaintiff worked for Defendants and Defendants deducted $158.84 in insurance premiums from Plaintiff's pay check each month. However, Defendants failed to pay Blue Cross and Blue Shield, the insurance

10

provider. As a result Plaintiff's insurance was cut off for a period of four or five days in March 2006. The lapse in coverage resulted in Plaintiff's inability to procure medications for those four or five days.

### 1. *Compensatory Damages*

The questions remains, however, to what relief is Plaintiff entitled? Initially, there is a concrete sum to which Plaintiff is entitled–the $158.84 that was deducted from her paycheck in March 2006, that was supposed to go to her insurer. Plaintiff paid that money to her employer but did not receive the benefit of that exchange for the four or five days that she was without insurance. Accordingly, Plaintiff, at a minimum, is owed $158.84.

Next, the court considers damages based on the alleged health issues that Plaintiff suffered due to the four or five day lapse in coverage. Understandably, Plaintiff could not remember what her expenses were in 2006 following the coverage lapse. At the hearing, Plaintiff stated that she called her pharmacy to renew some of her prescriptions, and learned that her insurance had lapsed. She admitted that not all of her prescriptions needed to be refilled at that time, but she could not remember exactly which prescriptions she was unable to fill. Because she did not have all of her medications, Plaintiff became sick. Approximately a week or so after the lapse, Plaintiff was admitted to the hospital for intravenous administration of drugs. Plaintiff could not remember if she had to stay overnight at the hospital, or whether it was an outpatient procedure. She did not know how much she paid for these medical services, but said "probably a couple thousand." Plaintiff asserts that because of that four or five day lapse, she has had to double her medications and take new medications. She said that her out of pocket expenses for medications went from $300 to $400 before the lapse to $600 to $800 after the lapse. Plaintiff stated that

11

her physical condition worsened after the lapse.

Unfortunately, Plaintiff has failed to produce any invoices or documentation for the medical services she received directly after the four or five day lapse in coverage. Also, Plaintiff's insurance was reinstated after the lapse, so the court is not sure how much of the medical bills Plaintiff needed to cover out of pocket. It is also unclear to the court whether Plaintiff's medication had to be increased over time due to the general progression of her disease or whether the lapse precipitated the need for increased medication. Plaintiff was unable to show with any degree of certainty that the lapse in insurance coverage caused some, or all of her health problems.

At the hearing, Plaintiff's counsel admitted that he did not have a sum certain for Plaintiff's damages. Further, he stated that he did not know what Plaintiff's out of pocket expenses had been in relation to the lapse of coverage. When asked by the court what her hard damages were, Plaintiff testified that she thought they were $50,000, which included her hospital bills and increased medications since March 2006. Although Plaintiff did not provide detailed information regarding her damages, it is still clear to the court that the four or five day lapse in coverage resulted in harm to Plaintiff. Specifically, the court notes that Plaintiff was admitted to the hospital shortly after the insurance lapse. Plaintiff stated that she paid a "couple" thousand dollars out of pocket in medical expenses for that treatment. Accordingly, the court recommends that Plaintiff be awarded $2,000 in compensatory damages for her hospital stay shortly after the insurance lapse. In addition, Plaintiff is entitled to the $158.84 that was deducted from her pay check in March 2006. Plaintiff's compensatory damages total $2,158.84.

2. *Punitive Damages*

In addition, Defendants actions were a clear violation of North Carolina General Statute § 58-50-40(b)(1), which makes it a crime for an employer to "cause the cancellation or nonrenewal of group health . . . insurance and the consequential loss of the coverage of the persons insured by willfully failing to pay such premiums in accordance with the terms of a group health . . . insurance contract." In order to obtain punitive damages under North Carolina law, a Plaintiff must prove that defendant is liable for compensatory damages, and that one of the following aggravating factors were present, (1) fraud, (2) malice, or (3) willful or wanton conduct. N. C. Gen. Stat. § 1D-15. Plaintiff testified that she called the "head office," and the individuals working there knew that the insurance had lapsed because they had not been paying the premiums. When she told them that she needed her medications, the person on the phone said that he did not care if she died due to her lack of insurance. The court concludes that the uncontroverted evidence is sufficient to establish willful or wanton conduct in violation of section 1D-15. See Watson v. Dixon, 511 S.E.2d 37, 41 (1999) (upholding a claim for punitive damages where the defendant engaged in "extreme and outrageous conduct," which satisfied the aggravating factor requirement section 1D-15).

The court recognizes that punitive damages are intended to punish a defendant and are not meant to compensate the plaintiff. Oestreicher v. American Nat'l Stores, Inc., 225 S.E.2d 797, 807-08 (N.C. 1976). Nonetheless, the court is convinced that Defendants displayed the type of "wanton, reckless, malicious, or oppressive" action that gives rise to punitive damages. Watson v. Dixon, 532 S.E.2d 175, 178 (N.C. 2000) (internal quotations omitted). The court concludes that Plaintiff is entitled to three times her actual damages, or $6,476.52, in punitive damages to punish Defendants and deter this type of conduct in

13

the future.

## CONCLUSION

For the above reasons, this court **RECOMMENDS** that the court enter default against Defendants Ambumed NC Inc. and Avetis Avesyan, and enter default judgment against Ambumed NC Inc. In addition, the court **RECOMMENDS** that the District Court award Plaintiff $2,158.84 in compensatory damages and $6,476.52 in punitive damages totaling $8,635.36 against Ambumed NC Inc.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This 17th day of October, 2008.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE